1

MORGAN, LEWIS & BOCKIUS LLP
Charles J. Malaret, Bar No. 144001

2

charles.malaret@morganlewis.com
Kathryn T. McGuigan, Bar No. 232112

3

kathryn.mcguigan@morganlewis.com
Emily L. Calmeyer, Bar No. 307432

4

emily.calmeyer@morganlewis.com
300 South Grand Avenue

5

Twenty-Second Floor
Los Angeles, CA  90071-3132

6

Tel:   +1.213.612.2500
Fax:  +1.213.612.2501

7

8

Attorneys for Defendants,
RAYMOND FU and SHISEIDO AMERICAS
CORPORATION (f/k/a GIARAN, INC.)

9

10

UNITED STATES DISTRICT COURT

11

CENTRAL DISTRICT OF CALIFORNIA

12

13

VASO GOUNTOUMAS, an individual,

Plaintiff,

14

vs.

15

GIARAN, INC., a Delaware
corporation; RAYMOND FU, an

16

individual, and DOES 1-10, inclusive,

17

Defendants.

18

19

20

21

22

23

24

25

26

27

28

Case No. 2:18-CV-07720-JFW-PJW

**MEMORANDUM OF POINTS
AND AUTHORITIES IN
SUPPORT OF DEFENDANTS'
MOTION TO COMPEL
ARBITRATION AND TO
DISMISS, OR IN THE
ALTERNATIVE STAY ACTION**

*[Notice of Motion and Motion;
Declarations of Charles J. Malaret
and Yun "Raymond" Fu In Support
Thereof; and [Proposed] Order filed
concurrently herewith]*

*Honorable John F. Walter*
Place:      Courtroom 7A
            United States Courthouse
            350 W. 1st Street
            Los Angeles, CA 90012

Date:      November 19, 2018
Time:      1:30 p.m.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 35074412.2

MEMORANDUM OF POINTS & AUTHORITIES ISO
DEFENDANTS' MOTION TO COMPEL ARBITRATION

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ...................................................................... 1

II.     RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ........... 1

    A.    Plaintiff Expressly Agreed To Arbitrate "Any Controversy Or Claim" Arising Out Of Or Relating To Her Services For Giaran ........ 1

    B.    The Parties' Relationship ........................................................ 2

        1.    Defendants Giaran and Fu ....................................... 2

        2.    Plaintiff Gountoumas ............................................. 3

    C.    Plaintiff Filed A Complaint In Violation Of Her Agreement To Arbitrate ............................................................................. 4

    D.    Defendants Requested That Plaintiff Stipulate to Arbitration of Her Claims – Plaintiff Refused ............................................... 4

III.    LEGAL ARGUMENT ............................................................... 5

    A.    Plaintiff's Claims Are Subject to Arbitration Under the Federal Arbitration Act ..................................................................... 5

        1.    The Arbitration Provision Is Valid And Must Be Enforced ....... 7

        2.    The Arbitration Provision Delegates the Gateway Issues to The Arbitrator ................................................... 7

            a.    The AAA Rules Clearly And Unmistakable Delegate The Gateway Questions To The Arbitrator ...... 8

    B.    The Gateway Issues Under The FAA Have Been Satisfied .............. 10

        1.    A Valid Agreement to Arbitrate Exists ..................................... 11

        2.    Plaintiff's Claims Are Covered by The Arbitration Provision ............................................................... 11

    C.    Massachusetts Law Requires Enforcement Of The Arbitration Provision .......................................................................... 12

    D.    California Law Does Not Alter The Enforceability Of The Arbitration Provision ............................................................ 14

    E.    Plaintiff's Lawsuit Should Be Dismissed ................................. 15

    F.    In The Alternative, Defendants Seek An Order Staying This Matter During The Pendency Of Arbitration ............................... 16

IV.    CONCLUSION ..................................................................... 17

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 35074412.2

i

MEMORANDUM OF POINTS & AUTHORITIES ISO
DEFENDANTS' MOTION TO COMPEL ARBITRATION

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Allied-Bruce Terminix Cos. v. Dobson,*
    513 U.S. 265 (1995) ........................................................................ 6

*Alvarez v. T-Mobile USA, Inc.,*
    822 F. Supp. 2d 1081 (E.D. Cal. 2011) ...................................... 11

*Anderson v. Pitney Bowes, Inc.,* No. C 04-4808 SBA,
    2005 WL 1048700 (N.D. Cal., May 4, 2005) ....................... 8, 10

*AT&T Techs., Inc. v. Communications Workers,*
    475 U.S. 643 (1986) ........................................................................ 9

*AT & T Mobility LLC v. Concepcion*
    563 U.S. 333 (2011) ................................................................ 5, 14

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.,*
    207 F.3d 1126 (9th Cir. 2000) ......................................... 7, 9, 11

*Circuit City Stores, Inc. v. Najd,*
    294 F.3d 1104 (9th Cir. 2002) ..................................................... 11

*Comedy Club, Inc. v. Improv W. Assocs.,*
    553 F.3d 1277 (9th Cir. 2009) ....................................................... 7

*Dean Witter Reynolds, Inc. v. Byrd,*
    470 U.S. 213 (1985) ........................................................................ 7

*EEOC v. Waffle House, Inc.,*
    534 U.S. 279 (2002) ...................................................................... 11

*Gilmer v. Interstate/Johnson Lane Corp.,*
    500 U.S. 20 (1991) .......................................................................... 5

*Green Tree Fin. Corp.-Ala. v. Randolph,*
    531 U.S. 79 (2000) .......................................................................... 7

*Howsam v. Dean Witter Reynolds, Inc.,*
    537 U.S. 79 (2002) ..................................................................... 7, 9

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

ii

DB2/ 35074412.2

*J. A. Jones Const. Co. v. Plumbers & Pipefitters Local 598*,
    568 F.2d 1292 (9th Cir. 1978) ....................................................................... 6

*Leyva v. Certified Grocers of California, Ltd.*,
    593 F.2d 857 (9th Cir. 1979) ...................................................................... 16

*Martin Marietta Aluminum, Inc. v. General Electric Company*,
    586 F.2d 143 (9th Cir. 1978) ...................................................................... 15

*Mastrobuono v. Shearson Leaman Hutton, Inc.*,
    514 U.S. 52 (1995) ...................................................................................... 11

*Maxit Designs, Inc. v. Coville, Inc.*,
    2006 WL 2734366 (E.D. Cal. Sept. 25, 2006) ......................................... 15

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983) ..................................................................................... 5, 7

*Nelson v. La. Elec. Rig Serv.*,
    2006 WL 5671234 (C.D. Cal. Feb. 22, 2006) ......................................... 16

*O'Connor v. Uber Technologies, Inc.*,
    2018 WL 4568553 (9th Cir., September 25, 2018) .................................. 14

*Perry v. Thomas*,
    482 U.S. 483 (1987) ..................................................................................... 5

*Rent-A-Center, W., Inc. v. Jackson*,
    561 U.S. 63 (2010) .................................................................................... 7, 9

*Simula, Inc. v. Autoliv, Inc.*,
    175 F.3d 716 (9th Cir. 1999) ...................................................................... 12

*Sparling v. Hoffman Constr. Co.*,
    864 F.2d 635 (9th Cir. 1988) ...................................................................... 15

*Stewart v. Paul, Hastings, Janofsky & Walker, LLP*,
    201 F. Supp. 2d 291 (S.D.N.Y 2002) ........................................................ 10

*United Steelworkers of Am. v. Am. Mfg. Co.*,
    363 U.S. 564 (1960) ..................................................................................... 9

*Wilcox v. Ho-Wing Sit*,
    586 F. Supp. 561 (N.D. Cal. 1984) ........................................................... 16

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

iii

DB2/ 35074412.2

MEMORANDUM OF POINTS & AUTHORITIES ISO
DEFENDANTS' MOTION TO COMPEL ARBITRATION

1

### STATE CASES

2

3
*Armendariz v. Foundation Health Psychcare Servs.*,
    24 Cal. 4th 83 (2000)...........................................................................14, 15

4

5
*Com. v. Philip Morris Inc.*,
    448 Mass. 836 (2007) ...............................................................................13

6

7
*Discover Bank v. Superior Court*,
    36 Cal. 4th 148 (2005)..............................................................................14

8
*Dixon v. Perry & Slesnick, P.C.*,
    75 Mass. App. Ct. 271 (2009) ..................................................................12

9

10
*Dream Theater, Inc. v. Dream Theater*,
    124 Cal. App. 4th 547 (2004) ....................................................................8

11

12
*Drywall Sys., Inc. v. ZVI Constr. Co.*,
    435 Mass. 664 (2002) ...............................................................................12

13

14
*Engalla v. Permanente Medical Group, Inc.*,
    15 Cal. 4th 951 (1997)..............................................................................15

15

16
*Haufler v. Zotos*,
    446 Mass. 489, 845 N.E.2d 322 (2006)......................................................6

17

18
*Home Gas Corp. of Mass., Inc. v. Walter's of Hadley, Inc.*,
    403 Mass. 772 (1989) ...............................................................................13

19

20
*Little v. Auto Steigler, Inc.*,
    29 Cal. 4th 1064 (2003)............................................................................15

21

22
*Massachusetts Mun. Wholesale Elec. Co. v. City of Springfield*,
    49 Mass. App. Ct. 108 (2000) ..................................................................13

23
*Miller v. Cotter*,
    448 Mass. 671 (2007) .........................................................................12, 13

24

25
*No. 1710, Int'l Ass'n of Fire Fighters v. Chicopee*,
    430 Mass. 417 (1999) ...............................................................................12

26

27
*Rodriguez v. Am. Tech., Inc.*,
    136 Cal. App. 4th 1110 (2006)...................................................................9

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 35074412.2

iv

MEMORANDUM OF POINTS & AUTHORITIES ISO
DEFENDANTS' MOTION TO COMPEL ARBITRATION

**FEDERAL STATUTES**

9 U.S.C. § 2 ...................................................................................................... 5

9 U.S.C. § 3 .................................................................................................... 16

9 U.S.C. § 4 ...................................................................................................... 7

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 35074412.2

MEMORANDUM OF POINTS & AUTHORITIES ISO
DEFENDANTS' MOTION TO COMPEL ARBITRATION

1                    **MEMORANDUM OF POINTS AND AUTHORITIES**

2  **I.**     **INTRODUCTION**

3         Plaintiff Vaso Gountoumas ("Plaintiff") improperly brought this lawsuit in

4 violation of the valid and enforceable mutual arbitration provision ("arbitration

5 provision") contained in the consulting agreement for business development and

6 marketing services she had with defendants Giaran, Inc. ("Giaran")[1] and Yun

7 "Raymond" Fu ("Raymond Fu") (collectively, "Defendants").  The arbitration

8 provision expressly covers disputes "arising out of or relating to" the consulting

9 agreement, requires arbitration to be conducted in accordance with the Commercial

10 Arbitration Rules of the American Arbitration Association ("AAA Rules"), and

11 requires the arbitration to take place in Suffolk County, Massachusetts.

12         The arbitration provision in the consulting agreement also provides, through

13 the AAA Rules, that an arbitrator, and not a court, exclusively decides all issues

14 relating to the existence, scope, or validity of the arbitration provision.

15         Accordingly, Defendants respectfully request the Court for an order

16 compelling arbitration of the claims alleged by Plaintiff in her complaint,

17 dismissing this judicial proceeding, or alternatively, staying Plaintiff's action

18 during the pendency of arbitration.

19  **II.**    **RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

20       **A.**    **Plaintiff Expressly Agreed To Arbitrate "Any Controversy Or**

21              **Claim" Arising Out Of Or Relating To Her Services For Giaran.**

22         Plaintiff entered into a consulting agreement ("Agreement") effective

23 February 1, 2017, to perform certain services for Giaran.  Declaration of Yun

24 "Raymond" Fu ("Fu Decl.") ¶ 8.  The Agreement Plaintiff signed covered

25 Plaintiff's services relating to "Marketing, Business Development, Team Setup,

26

27   [1] Giaran was acquired by Shiseido Americas Corporation in November 2017 and

28 was consolidated into the company.  Accordingly, Defendants filed its response to
the complaint as Shiseido Americas Corporation, formerly known as Giaran, Inc.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 35074412.2

1

MEMORANDUM OF POINTS & AUTHORITIES ISO
DEFENDANTS' MOTION TO COMPEL ARBITRATION

[and] Management" for Giaran. *Id.*, ¶ 8, Ex. 2 at Ex. A. Plaintiff alleges that she performed work consistent with the Agreement. Dkt 5-1, ¶¶ 11-14, 20, 21. Giaran alleges that all of Plaintiff's work performed for Giaran was pursuant to and related to the Agreement. Fu Decl. ¶ 8.

Under the Agreement, Plaintiff expressly agreed to arbitrate any controversies or claims arising out of or related to her work for Giaran. Paragraph 9 of the Agreement titled, "<u>Arbitration</u>" clearly states:

> ***Any controversy or claim*** (except those regarding Inventions, Proprietary Information or intellectual property) ***arising out of or relating to this Agreement, or the breach thereof, shall be settled by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association***, and judgment on the award rendered by the arbitrator may be entered in any court having jurisdiction thereof, provided however, that each party will have a right to seek injunctive or other equitable relief in a court of law. . . . Consultant hereby consents to the arbitration in the Commonwealth of Massachusetts in the county of Suffolk.

*Id.*, ¶ 8, Ex. 2 at p. 4, at ¶ 9 (emphasis added). The arbitration provision incorporates the AAA Rules, is binding as to both Plaintiff and Giaran, and provides for arbitration in Massachusetts. *Id.* The Agreement is governed by the laws of Massachusetts. *Id.*, ¶ 8, Ex. 2 at p. 4, at ¶ 8. Plaintiff expressly acknowledged the arbitration provision by signing the Agreement.

**B.    The Parties' Relationship**

**1.    Defendants Giaran and Fu**

Defendant Giaran, a Delaware company, had its headquarters in Boston, Massachusetts, before being acquired by Shiseido Americas Corporation ("Shiseido"). Fu Decl. ¶ 2. Giaran is an instant and interactive virtual makeup robot that provides users a virtual try-on experience of their cosmetics products in-store, online, or on-the-go, with exact color-match and recommendations customized to individual face-shape, skin tone and texture. *Id.,* ¶ 3. It essentially is

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 35074412.2

2

MEMORANDUM OF POINTS & AUTHORITIES ISO
DEFENDANTS' MOTION TO COMPEL ARBITRATION

a virtual makeover tool. *Id.* Giaran is the brainchild of Defendant Yun "Raymond" Fu, a professor at Northeastern University, based on patented technology he developed over sixteen years of research and development. *Id.,* ¶ 4.

### 2. Plaintiff Gountoumas

In May 2016, Plaintiff responded to a full-time job posting on the Harvard Business School website for a position as a "Business Development Manager" in Boston, Massachusetts at Giaran. *Id.,* ¶ 5. Plaintiff applied for the position and expressed her passion for the cosmetics, beauty and fashion industries. *Id.* At the time, Plaintiff was living in Los Angeles and had no experience in the cosmetics industry, but acknowledged in her email response to the posting that, "I am aware this position is based in Boston, and am willing to relocate should I be a good fit with your company, but would require a 2-week notice with my current employer." *Id.,* ¶ 6 at Ex. 1.

In the latter part of 2016, and into 2017, Plaintiff volunteered to perform consulting tasks for Giaran to see if she was a good fit for the company. During this time, the parties negotiated the terms of Plaintiff's consulting agreement with Giaran, and her relocation to Boston. *Id.,* ¶ 7. As part of their relationship, Giaran, through Defendant Fu, offered Plaintiff a written stock purchase arrangement, signaling his commitment to her. *Id.,* ¶ 9. The stock purchase agreement offered to Plaintiff related to the consulting work that she agreed to perform for Giaran in Boston. *Id.* The stock purchase agreement required Plaintiff to work for Giaran for one year before any stock vested. *Id.* The parties also memorialized the terms of Plaintiff's consulting agreement in writing, including the mutual arbitration provision. *Id.,* ¶ 8. Despite her promise to move to Boston, on February 6, 2017, Plaintiff refused to relocate, and the parties' relationship deteriorated thereafter. *Id.,* ¶ 10. As of March 2017, the parties were no longer in communication, and their relationship had ended. *Id.*

In November 2017, Shiseido acquired Giaran. *Id.,* ¶ 11. Plaintiff learned of

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 35074412.2

3

MEMORANDUM OF POINTS & AUTHORITIES ISO
DEFENDANTS' MOTION TO COMPEL ARBITRATION

the acquisition, and despite her refusal to move to Boston as promised or perform any work after March 2017, she now claims that she is owed 15% of the sale of Giaran, and wages as an employee.

**C.    Plaintiff Filed A Complaint In Violation Of Her Agreement To Arbitrate.**

Despite the mutual arbitration provision in the Agreement, on July 24, 2018, Plaintiff filed a Complaint ("Complaint") in the Los Angeles County Superior Court against Giaran and Fu, alleging causes of action for: (1) Declaratory Relief; (2) Breach of Contract; (3) Breach of Implied Covenant of Good Faith and Fair Dealing; (4) Accounting; (5) Breach of Fiduciary Duty; (6) Conversion; (7) Unjust Enrichment, Restitution, and Constructive Trust; (8) Failure to Pay Minimum Wage; (9) Failure to Pay Wages; (10) Failure to Pay Wages Upon Separation; (11) Failure to Reimburse Expenses; (12) Failure to Maintain Required Records; (13) Failure to Allow Inspection of Personnel File; (14) Unfair Business Practices; (15) Violation of the Right of Publicity; (16) Quantum Merit; (17) Fraud and Deceit; and (18) Restitution.  Dkt 5-1.

**D.    Defendants Requested That Plaintiff Stipulate to Arbitration of Her Claims – Plaintiff Refused.**

On September 6, 2018, following the filing of Plaintiff's Complaint and removal to federal court, counsel for the parties discussed the arbitration agreement and Defendants' intent to move to compel arbitration based on the arbitration provision in the parties' consulting agreement.  Declaration of Charles J. Malaret, ¶ 2.  Counsel for Defendants requested that Plaintiff stipulate to arbitration. Defendants' counsel informed Plaintiff's counsel that if Plaintiff would not so stipulate, Defendants intended to move to compel arbitration promptly.  *Id.* Plaintiff's counsel advised that Plaintiff would not submit her claims to arbitration. *Id.* ¶ 3.  On October 10, 2018, in furtherance of the parties' meet and confer efforts, Defendants' counsel reached out to Plaintiff's counsel and provided a draft of the

1   motion to compel arbitration Defendants intended to file if Plaintiff would not
2   stipulate to arbitrating her claims.  Defendants' counsel requested that Plaintiff's
3   counsel further discuss the subject of arbitration.  *Id.* ¶ 4.  On October 11, 2018,
4   Plaintiff's counsel responded to Defendants' counsel's meet and confer efforts
5   stating that Plaintiff did not believe Plaintiff's claims were subject to arbitration for
6   the reasons previously discussed and laying out those reasons.  *Id.* ¶ 5.  On October
7   12, counsel for the parties emailed further.

8        As of the date of this Motion, Plaintiff has refused to comply with the
9   Agreement's arbitration provision by dismissing her lawsuit and arbitrating her
10   claims.  ¶ 6.  This motion is made following the conference of counsel pursuant to
11   L.R. 7-3 which took place on September 6, 2018 and September 10-11, 2018.

12   **III.   LEGAL ARGUMENT**

13       **A.    Plaintiff's Claims Are Subject to Arbitration Under the Federal**
14             **Arbitration Act.**

15        As affirmed by the United States Supreme Court in *AT & T Mobility LLC v.*
16   *Concepcion*, the Federal Arbitration Act ("FAA") declares a liberal policy favoring
17   the enforcement of arbitration policies, stating: "[a] written provision in ... a contract
18   evidencing a transaction involving commerce to settle by arbitration a controversy
19   thereafter arising out of such contract or transaction ... shall be valid, irrevocable,
20   and enforceable, save upon such grounds as exist at law or in equity for the
21   revocation of any contract." 563 U.S. 333, 339 (2011) (citing 9 U.S.C. § 2). The
22   FAA is designed "to move the parties to an arbitrable dispute out of court and into
23   arbitration as quickly and easily as possible." *Moses H. Cone Mem'l Hosp. v.*
24   *Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983); *see also*, *Gilmer v. Interstate/*
25   *Johnson Lane Corp.*, 500 U.S. 20, 24-25 (1991). The FAA does not simply place
26   arbitration agreements on equal footing with other contracts; rather, it "*favor[s]*
27   arbitration agreements." *Perry v. Thomas*, 482 U.S. 483, 489 (1987) (emphasis
28   added).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 35074412.2

5

MEMORANDUM OF POINTS & AUTHORITIES ISO
DEFENDANTS' MOTION TO COMPEL ARBITRATION

1   The Supreme Court has held that the term "involving commerce" is
2   interpreted broadly, so that the FAA governs any arbitration agreement that affects
3   commerce in any way. *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 273-
4   74 (1995).

5   In this case, the FAA applies to the arbitration provision.  Giaran was a
6   Delaware corporation based in Massachusetts.  Plaintiff, a California resident,
7   performed services for Defendants.  Plaintiff signed the Agreement which contains
8   a valid and enforceable arbitration provision.[2]  Plaintiff's Agreement covered, *inter*
9   *alia*, Plaintiff's services of marketing and developing Giaran's product nationally,
10  including allegedly growing Giaran's business, securing investors in various
11  locations, performing national beauty industry market research for selling Giaran's
12  product, visiting brick and mortar makeup stores, conducting consumer research,
13  and determining the pricing strategy for selling Giaran's product nationally,
14  interstate commerce is necessarily involved.  Dkt 5-1, ¶¶ 4, 8, 12-14, 20, 21.

15  This type of business and business relationship necessarily affects and
16  involves interstate commerce. *Allied-Bruce Terminix Cos.*, 513 U.S. at 282
17  (agreeing that contract between homeowner in Alabama and multistate termite
18  control company involved interstate commerce and came within the FAA).
19  Plaintiff's contractual relationship with Defendants therefore involved commerce
20  under the meaning of the FAA.  Accordingly, the FAA applies and requires
21  arbitration of Plaintiff's claims.

22  [2] Defendants anticipate that Plaintiff may argue the consulting agreement and
23  arbitration provision contained therein is not enforceable because Giaran did not
    sign the agreement.  That only one party signed does not render a contract
24  unenforceable where the non-signatory seeks to enforce the contract against the
    signatory. *See, J. A. Jones Const. Co. v. Plumbers & Pipefitters Local 598*, 568
25  F.2d 1292, 1295 (9th Cir. 1978) ("That (a party) failed to sign the agreement is
    immaterial for any written contract though signed only by one of the parties binds
26  the other if he accepts it and both act in reliance on it as a valid contract.")
    (citations omitted); *Haufler v. Zotos*, 446 Mass. 489, 498-99, 845 N.E.2d 322, 331
27  (2006) ("A written contract, signed by only one party, may be binding and
    enforceable even without the other party's signature if the other party manifests
28  acceptance."); Cal. Civ. Code § 3388 (generally, a party who did not sign a written
    contract may seek to enforce the contract against a party who did sign it).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 35074412.2

6

MEMORANDUM OF POINTS & AUTHORITIES ISO
DEFENDANTS' MOTION TO COMPEL ARBITRATION

1      **1.     The Arbitration Provision Is Valid And Must Be Enforced.**

The FAA requires federal district courts to compel the arbitration of all claims subject to an arbitration agreement. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) ("By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.") (citing 9 U.S.C. §§ 3,4); *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1284 (9th Cir. 2009) ("[W]here the contract contains an arbitration clause, there is a presumption of arbitrability.")  The party resisting arbitration bears the burden of showing the arbitration agreement is invalid or does not encompass the claims at issue. *See Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 92 (2000).

The FAA requires courts to compel arbitration "in accordance with the terms of the agreement" upon the motion of either party to the agreement, consistent with the principle that arbitration is a matter of contract. 9 U.S.C. § 4. In determining whether to compel arbitration, only two "gateway" issues need to be evaluated: (1) whether there exists a valid agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute. *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000); *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83-84 (2002). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone*, 460 U.S. at 24-25.

**2.     The Arbitration Provision Delegates the Gateway Issues to The Arbitrator.**

Before reaching the gateway issues, the Court must first examine the underlying contract to determine whether the parties have agreed to commit the threshold question of arbitrability to the arbitrator. *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010) ("An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the

1    federal court to enforce, and the FAA operates on this additional arbitration

2    agreement just as it does on any other.").  The Court's review is limited to the face

3    of the arbitration agreement.  *See Anderson v. Pitney Bowes, Inc.*, No. C 04-4808

4    SBA, 2005 WL 1048700, *4 (N.D. Cal., May 4, 2005) (courts "conduct[] a *facial*

5    *and limited review* of [a] contract" when deciding "whether the parties have in fact

6    clearly and unmistakably agreed to commit the question of arbitrability to the

7    arbitrator"); *accord Dream Theater, Inc. v. Dream Theater*, 124 Cal. App. 4th 547,

8    553 (2004).

9              **a.      The AAA Rules Clearly And Unmistakable Delegate**

10                      **The Gateway Questions To The Arbitrator.**

11            Any attempt by Plaintiff to claim that the arbitration provision is invalid or

12   unenforceable is not properly before this Court because the parties agreed that any

13   dispute relating to the existence, scope, or validity of the arbitration provision be

14   reserved for the jurisdiction of the arbitrator.  Specifically, the arbitration provision

15   expressly confirms that the Parties agreed to be bound by the AAA Rules.  Rule R-

16   7 of the AAA Commercial Rules provides:

17            R-7. Jurisdiction

18            (a) *The arbitrator shall have the power to rule on his or her*

19            *own jurisdiction, including any objections with respect to the*

20            *existence, scope or validity of the arbitration agreement.*

21            (b) The arbitrator shall have the power to determine the

22            existence or validity of a contract of which an arbitration clause forms

23            a part. Such an arbitration clause shall be treated as an agreement

24            independent of the other terms of the contract. A decision by the

25            arbitrator that the contract is null and void shall not for that reason

26            alone render invalid the arbitration clause.

27            (c) A party must object to the jurisdiction of the arbitrator or to

28            the arbitrability of a claim or counterclaim no later than the filing of

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 35074412.2

8

MEMORANDUM OF POINTS & AUTHORITIES ISO
DEFENDANTS' MOTION TO COMPEL ARBITRATION

the answering statement to the claim or counterclaim that gives rise to the objection. The arbitrator may rule on such objections as a preliminary matter or as part of the final award.

American Arbitration Association, Commercial Arbitration Rules and Mediation Procedures[3] (emphasis added). Thus, any challenge Plaintiff may attempt to raise as to the validity of the arbitration provision is not properly before this Court but, by agreement, must be raised before the arbitrator.

The United States Supreme Court has held that parties may agree to submit the issue of "arbitrability" to the arbitrator for decision. *See Rent-A-Center, W., Inc.*, 561 U.S. at 68-69 (holding that threshold issue of arbitrability is for the arbitrator to decide where the parties' arbitration agreement provides that the arbitrator has exclusive authority to resolve any dispute over its enforceability); *see also Rodriguez v. Am. Tech., Inc.*, 136 Cal. App. 4th 1110, 1123 (2006) (finding parties agreed to have the arbitrator determine the scope of the arbitration clause where the agreement mandated arbitration in accordance with the American Arbitration Association's rules).

Normally, in deciding whether to compel arbitration, pursuant to the FAA, the trial court is tasked with determining two "gateway" issues: (1) whether there was an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute. *Chiron Corp.*, 207 F.3d at 1130; *Howsam*, 537 U.S. at 83-84. Additionally, the United Supreme Court has stated that the question of arbitrability is for judicial determination "unless the parties clearly and unmistakably provide otherwise." *AT&T Techs., Inc. v. Communications Workers*, 475 U.S. 643, 649 (1986). However, when, as in this case, the parties agreed to submit the question of arbitrability to the arbitrator, a court's inquiry is limited to the issue of whether the party seeking arbitration is making a claim which is, on its face, governed by the

[3] The American Arbitration Association's Commercial Rules are available at https://www.adr.org/sites/default/files/CommercialRules_Web.pdf

contract. *United Steelworkers of Am. v. Am. Mfg. Co.*, 363 U.S. 564, 567-68 (1960); *see Anderson*, 2005 WL 1048700, at \*4. By consenting to the jurisdiction of the arbitrator any issues pertaining to the existence, scope or validity of the arbitration provision, the parties have clearly agreed that an arbitrator, not a court, decides these issues. Accordingly, any challenge to the arbitrability of Plaintiff's claims is not properly before this Court because the parties agreed in a binding contract to have such issues resolved by the arbitrator.

Likewise, any contention by Plaintiff that the arbitration provision is unenforceable because of purported unconscionability must also be decided by the arbitrator and not the Court. *See, e.g.*, *Anderson*, 2005 WL 1048700, at \*2 (concluding "if the parties 'clearly and unmistakably' empowered an arbitrator to determine arbitrability, the Court must compel arbitration of the gateway issues as well"); *Stewart v. Paul, Hastings, Janofsky & Walker, LLP*, 201 F. Supp. 2d 291, 292 (S.D.N.Y 2002) (ruling that the arbitrator has the exclusive jurisdiction to determine unconscionability).

Here, there can be no question that, through the arbitration provision, the parties entered into an agreement to arbitrate the claims raised in this lawsuit. This is all the Court needs to find in order to compel Plaintiff to arbitrate her claims. To the extent that Plaintiff wishes to argue that the arbitration provision is void due to unconscionability or that the arbitration provision does not cover all of her claims, those issues must solely be addressed and resolved by the arbitrator. Accordingly, the Court should compel Plaintiff to arbitrate her claims and dismiss the underlying action pursuant to the arbitration provision.

### B.   The Gateway Issues Under The FAA Have Been Satisfied.

Alternatively, should the Court decide that issues relating to the existence, scope, or validity of the arbitration provision are not within the exclusive jurisdiction of the arbitrator, Plaintiff's claims should be referred to arbitration in any event because the arbitration provision is valid and enforceable. As explained

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 35074412.2

10

MEMORANDUM OF POINTS & AUTHORITIES ISO
DEFENDANTS' MOTION TO COMPEL ARBITRATION

1  above, absent an agreement between parties to have an arbitrator decide all issues

2  regarding arbitrability, the FAA restricts a court's inquiry into compelling

3  arbitration to two threshold questions: (1) whether there is a valid agreement to

4  arbitrate; and (2) whether the agreement covers the dispute. *Chiron Corp.*, 207

5  F.3d at 1130.

6  ### 1.    A Valid Agreement to Arbitrate Exists.

7          In order to compel arbitration, the moving party need only prove that an

8  agreement to arbitrate the claims exists by a preponderance of the evidence.

9  *Alvarez v. T-Mobile USA, Inc.*, 822 F. Supp. 2d 1081, 1084 (E.D. Cal. 2011).

10  Mutual promises to arbitrate suffice to establish the requisite consideration. *Circuit*

11  *City Stores, Inc. v. Najd*, 294 F.3d 1104, 1108 (9th Cir. 2002).  Defendants have

12  met their burden to show a valid and enforceable agreement.  Plaintiff agreed to

13  submit all claims against Defendants arising out of or relating to the parties'

14  Agreement to binding arbitration—by signing the Agreement, Plaintiff agreed to be

15  bound by the arbitration provision.  Further, the arbitration provision imposes

16  mutual obligations to arbitrate, thereby establishing the requisite consideration.  Fu

17  Decl., ¶ 2, Ex. 2 at ¶ 9.  The arbitration provision requires the parties to submit their

18  respective disputes arising out of, or related to, the Agreement to arbitration.  *Id.*

19  ### 2.    Plaintiff's Claims Are Covered by The Arbitration

20  ### Provision.

21          In determining what claims are subject to arbitration, the threshold inquiry is

22  an analysis of the contractual language.  *See EEOC v. Waffle House, Inc.*, 534 U.S.

23  279, 289 (2002) ("Absent some ambiguity in the agreement . . . it is the language of

24  the contract that defines the scope of disputes subject to arbitration."); *see also*

25  *Mastrobuono v. Shearson Leaman Hutton, Inc.*, 514 U.S. 52, 57-58 (1995).

26          Here, Plaintiff's claims fall directly within the scope of the arbitration

27  provision.  The arbitration provision applies to "any controversy or claim" "arising

28  out of or relating to" the Agreement.  This provision is broad enough to cover

Morgan, Lewis & Bockius LLP
Attorneys at Law
Los Angeles

DB2/ 35074412.2

11

MEMORANDUM OF POINTS & AUTHORITIES ISO
DEFENDANTS' MOTION TO COMPEL ARBITRATION

1 Plaintiff's breach of contract and related claims as well as her wage and hour claims

2 because, as pleaded by Plaintiff, the facts underlying these claims relate to and stem

3 from controversies and claims that arose between Plaintiff and Defendants as a

4 result of the Agreement.  *See Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th

5 Cir. 1999) ("To require arbitration, [the plaintiff]'s factual allegations need only

6 'touch matters' covered by the contract containing the arbitration clause and all

7 doubts are to be resolved in favor of arbitrability.").  Therefore, Defendants have

8 met their burden to demonstrate a valid and enforceable arbitration agreement, and

9 the Court should grant Defendants' motion to compel arbitration.

10 **C.** **Massachusetts Law Requires Enforcement Of The Arbitration**

11 **Provision.**

12      Under Massachusetts law, the arbitration provision governing Plaintiff's

13 claims applies.[4]  "[T]here is a strong public policy favoring arbitration in

14 Massachusetts." *Dixon v. Perry & Slesnick, P.C.,* 75 Mass. App. Ct. 271, 278

15 (2009).  Indeed, where a contract contains an arbitration clause, there is a

16 presumption of arbitrability under Massachusetts law and arbitration "should not be

17 denied unless it may be said with positive assurance that the arbitration clause is not

18 susceptible of an interpretation that covers the asserted dispute. Doubts should be

19 resolved in favor of coverage. . . . Such a presumption is particularly applicable

20 where the clause is . . . broad." *Drywall Sys., Inc. v. ZVI Constr. Co.*, 435 Mass.

21 664, 666-67 (2002), citing *Local No. 1710, Int'l Ass'n of Fire Fighters v. Chicopee*,

22 430 Mass. 417, 421 (1999).

23      The Massachusetts Arbitration Act "expresses a strong public policy favoring

24 _____

25 [4] To the extent the Court determines that the consulting agreement's choice of law provision dictates the application of Massachusetts law, the Massachusetts

26 Arbitration Act ("MPA") also applies here by its plain terms and compels arbitration of Plaintiff's claims.  Fu Decl., ¶ 8, Ex. 2 at ¶ 8; *see e.g.*, *Miller v.*

27 *Cotter*, 448 Mass. 671, 676–77 (2007) (noting that the FAA's language is "remarkably similar to that of the Massachusetts Act" and that both may apply and

28 would be interpreted in the same way, given the substantial similarities between the FAA and the MPA.)

arbitration as an expeditious alternative to litigation for settling commercial disputes." *Home Gas Corp. of Mass., Inc. v. Walter's of Hadley, Inc.*, 403 Mass. 772, 774 (1989) (citations omitted). "The plain language of the Massachusetts Act requires that an arbitration agreement 'shall be valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract.' [] These grounds include fraud, duress, or unconscionability." *Miller v. Cotter*, 448 Mass. 671, 679 (2007).

Under Massachusetts law, an arbitration agreement "is a creature of contract" and the court will first look to the language of the arbitration clause to determine whether the parties by contract submitted the dispute to arbitration. *Com. v. Philip Morris Inc.*, 448 Mass. 836, 843 (2007) ("[W]hen considering a broadly worded arbitration clause, there is a presumption that a contract dispute is encompassed by the clause unless it is clear that the dispute is excluded.")

As discussed in Section II.A above, Plaintiff's claims based on the business development and marketing services she performed for Giaran are encompassed by the broad arbitration provision language compelling arbitration of "any controversy or claim" arising out of or relating to the parties' consulting agreement.  Fu Decl., ¶ 8, Ex. 2 at ¶9.  The language of the arbitration provision thus plainly and unambiguously encompasses the present dispute.  See *Massachusetts Mun. Wholesale Elec. Co. v. City of Springfield*, 49 Mass. App. Ct. 108, 111 (2000) ("[i]nterpretation of language in a written contract is a question of law for the court, and if the words are plain and free from ambiguity, they must be construed in accordance with their ordinary and usual sense.")  Additionally, there is no evidence of fraud, duress, or unconscionability (including surprise or oppression). The parties negotiated at arms' length and Plaintiff chose to accept the terms of the consulting agreement, negotiating the scope of the consulting agreement's coverage.  *See, e.g.*, Fu Decl., ¶ 8, Ex. 2 at Exhibit A.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 35074412.2

13

MEMORANDUM OF POINTS & AUTHORITIES ISO
DEFENDANTS' MOTION TO COMPEL ARBITRATION

**D.      California Law Does Not Alter The Enforceability Of The Arbitration Provision.**

While the Agreement provides that it is to be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts, Plaintiff may argue that California law applies.

As explained above, the FAA governs the arbitration provision.  Thus, this Court need not even consider the requirements set forth by the California Supreme Court in *Armendariz v. Foundation Health Psychcare Servs.*, 24 Cal. 4th 83 (2000), in evaluating the enforceability of the arbitration provision.  In any event, *Armendariz* is preempted by the FAA.  In *Concepcion*, the United States Supreme Court overruled as preempted the California Supreme Court's decision in *Discover Bank v. Superior Court*, 36 Cal. 4th 148 (2005), finding that California had run afoul of the central premise that arbitration is a matter of contract, that contracts must be enforced per their terms, and that states cannot erect obstacles to their enforcement by imposing conditions not generally applicable to all contracts. *Concepcion*, 563 U.S. at 346-47.  By imposing conditions to the enforcement of arbitration contracts not applicable to all contracts, *Armendariz* is preempted, just as *Discover Bank* was preempted.

Moreover, even assuming *Armendariz* remains good law, it is inapplicable in this case because its application is limited to arbitration agreements entered into in the context of employer-employee relationships.  *See Armendariz*, 24 Cal. 4th at 110-11.  Paragraph 5 of the Agreement clearly states that Plaintiff's business relationship with Defendants was that of an independent contractor, and not an employer-employee relationship.  Consequently, *Armendariz* is inapposite.

Nevertheless, even if *Armendariz* is applicable to contracts pertaining to independent contractors, the arbitration provision is enforceable.  *O'Connor v. Uber Technologies, Inc.*, 2018 WL 4568553 at *5 (9th Cir., September 25, 2018).

Both procedural and substantive unconscionability "must . . . be present in

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 35074412.2

order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability." *Armendariz*, 24 Cal. 4th at 114.  Plaintiff, as the party asserting the defense of unconscionability, has the burden of proving it. *Engalla v. Permanente Medical Group, Inc.*, 15 Cal. 4th 951, 972 (1997) ("a party opposing the petition [to compel arbitration] bears the burden of proving by a preponderance of the evidence any fact necessary to its defense").  She cannot meet her burden.  First, Plaintiff cannot prove procedural unconscionability.  Second, even assuming she could meet her burden to establish *procedural* unconscionability, she cannot meet her burden to establish *substantive* unconscionability because the arbitration provision complies with *Armendariz's* requirements, "including neutrality of the arbitrator, the provision of adequate discovery, a written decision that will permit a limited form of judicial review, and limitations on the cost of arbitration." *Armendariz*, 24 Cal. 4th at 91; *Little v. Auto Steigler, Inc.*, 29 Cal. 4th 1064, 1080-81 (2003).

### E.   Plaintiff's Lawsuit Should Be Dismissed.

All of the claims raised by Plaintiff in her lawsuit are subject to arbitration. Consequently, dismissal is appropriate.  A district court has the discretion to dismiss a proceeding when "the arbitration clause [is] broad enough to bar all of the plaintiff's claims." *Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 638 (9th Cir. 1988) (finding the arbitration clause sufficiently broad because it required Plaintiff to submit all claims to arbitration); *see also Martin Marietta Aluminum, Inc. v. General Electric Company,* 586 F.2d 143, 147-48 (9th Cir. 1978) (affirming summary judgment in defendant's favor based on plaintiff's failure to comply with arbitration obligations); *Maxit Designs, Inc. v. Coville, Inc.*, 2006 WL 2734366, at *5-6 (E.D. Cal. Sept. 25, 2006).

Plaintiff filed this suit rather than pursuing arbitration.  After being reminded of her agreement to arbitrate, she still refused to comply with her contractual obligation.  Finally, all of the claims she asserts against Defendants are within the

1 scope of the arbitration provision.  Dismissing this action will protect Defendants'

2 contractual rights to have this dispute resolved through arbitration, and it will avoid

3 the large economic burden on the parties and the Court imposed by judicial

4 litigation.

### F.      In The Alternative, Defendants Seek An Order Staying This Matter During The Pendency Of Arbitration.

7 Under the FAA, after the court determines that an agreement exists to

8 arbitrate a controversy, it "shall" order the parties to submit their disputes to

9 arbitration.  9 U.S.C. §3.  The FAA also provides that, when the court is "satisfied

10 that the issue involved . . . is referable to arbitration . . .  [it] shall on the application

11 of one of the parties stay the trial of the action until such arbitration has been had in

12 accordance with the terms of the agreement."  *Id.*  Courts interpreting the language

13 of this statute makes clear that the language should be read literally: as long as: "(1)

14 there is an agreement to arbitrate and (2) *at least one of the issues involved in the*

15 *suit is within the scope of the arbitration agreement*, a stay is to be granted as a

16 matter of course, except in rare cases."  *See Nelson v. La. Elec. Rig Serv.*, 2006 WL

17 5671234, at *8 (C.D. Cal. Feb. 22, 2006) (emphasis in original).  Here, at the very

18 least, the Court should enter an order compelling Plaintiff to submit her claims to

19 binding arbitration, and stay the remainder of this action pending completion of that

20 arbitration.  *See id*; *see also Wilcox v. Ho-Wing Sit*, 586 F. Supp. 561, 567 (N.D.

21 Cal. 1984) (district courts have "authority to stay proceedings in the interest of

22 saving time and effort for itself and litigants"); *Leyva v. Certified Grocers of*

23 *California, Ltd*., 593 F.2d 857, 863-64 (9th Cir. 1979) (trial court may properly

24 enter a stay of an action before it, pending resolution of independent proceedings

25 which bear on the case).

26 ///

27 ///

28 ///

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 35074412.2

16

MEMORANDUM OF POINTS & AUTHORITIES ISO
DEFENDANTS' MOTION TO COMPEL ARBITRATION

## IV.   **CONCLUSION**

For the foregoing reasons, the Court should grant Defendants' motion to compel arbitration on all of Plaintiff's claim and dismiss, or in the alternative, stay Plaintiff's action.

Dated:  October 15, 2018

MORGAN, LEWIS & BOCKIUS LLP


By: /s/ Charles J. Malaret
Charles J. Malaret
Kathryn T. McGuigan
Emily L. Calmeyer

Attorneys for Defendants, Shiseido Americas Corporation, f/k/a Giaran, Inc.; Raymond Fu

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 35074412.2

17

MEMORANDUM OF POINTS & AUTHORITIES ISO
DEFENDANTS' MOTION TO COMPEL ARBITRATION